E. I. DU PONT DE NEMOURS & COMPANY, INC.
*v.* DOBRINICH ET AL.

[No. 17,122. Filed June 22, 1943.]

*Abel Klaw,* of Wilmington, Delaware, *Galvin, Galvin & Leeney,* of Hammond, and *White, Wright & Boleman,* of Indianapolis, for appellant.

*William J. McAleer, Francis J. Dorsey,* and *William L. Travis,* all of Hammond, for appellees.

FLANAGAN, J.—This is an appeal from an award of the Industrial Board.

It was stipulated that John Horvatich was employed by appellant at an average weekly wage of $42.42; that he was injured on the 15th day of February, 1942, by an accident arising out of and in the course of his employment by appellant; that as a result of said injuries he died immediately; and that appellant had notice.

There is evidence of the following facts:

Appellee, Barbara Dobrinich, is the mother of decedent, and appellees, Anthony Horvatich and Rudolph Horvatich, are his brothers who were 15 and 13 years old respectively at the date of his death. The decedent was twenty years and eleven months old at the time of his death and was unmarried. The natural father of the decedent died many years ago and subsequently, in 1932, the widow Barbara was married to John Dobrinich. Thereafter, appellee, Barbara Dobrinich, her children by her first marriage and her second husband lived together under one roof. In this family group at the time of the accidental death of decedent. there were the following: Appellee, Barbara Dobrinich, and her husband John, a daughter, Ann Horvatich Stachelski, and her husband Chester, another daughter, Rose Horvatich, who was unmarried, and four sons, Mathew, John, Anthony and Rudolph Horvatich, all of whom were unmarried.

The husband was steadily employed, earning $67 to $72 every two weeks, all of which he brought home and gave to his wife. Louis Horvatich, another son, lived in California and sent his mother $10 every two or three months. The unmarried daughter Rose earned $16 or $17 per week, all of which she gave to her mother. The married daughter and her husband rented part of the house and paid Mrs. Dobrinich $23 per month rent. The son Mathew earned $40 per week, all of which he gave his mother. Anthony and Rudolph did not work. Appellee, Barbara Dobrinich, and her husband owned the house in which they lived but it was encumbered with a mortgage of $2,500, the monthly payments on which were $35. Mrs. Dobrinich paid all expenses and gave to each of the members of the family, other than the married daughter and her hus-

band, such money as they needed for clothes and other personal expenses.

When decedent worked he gave his mother his pay check except on two occasions when he needed some money to pay on accounts before he got home and his mother permitted him to cash the checks. She usually gave him back $5 per week but on occasions gave him more or less as his needs required. At the time of his death he was buying an automobile and his mother gave him the money to make the payments, which were $27 per month.

All the money received by Mrs. Dobrinich from the various members of the family was put in a common fund from which she paid the expenses of maintaining the family.

After the death of decedent the mother had to forego needed medical treatment for herself which she had been receiving and the two minor brothers had to go to work to help buy their school books and clothes.

Section 40-1403, Burns' 1940 Replacement, § 16414, Baldwin's 1934, prescribes who shall be conclusively presumed to be wholly dependent upon a deceased employee. Appellees are not within any of the prescribed classes. The same section then provides as follows:

> "In all other cases, questions of total dependency shall be determined in accordance with the fact, as the fact may be at the time of the death, and (the) question of partial dependency shall be determined in like manner as of date of the injury."

Appellant says that the finding of the Industrial Board that appellees were partial dependents of the deceased is not sustained by sufficient evidence because the evidence is silent as to the amount reasonably necessary to support appellees in a manner and condition suitable to their station in life.

It is true that there is no evidence as to the exact amount in figures needed to support appellees. But there is evidence that they needed decedent's contribution. There is evidence that, when his contributions stopped, the mother had to forego needed medical attention which she had been receiving and the two younger brothers had to go to work in order to supply themselves with necessary clothes and school books. We think such evidence is sufficient to show that decedent's contributions were necessary to support appellees in a manner and condition suitable to their station in life.

Appellant says that the evidence does not show that decedent paid all his wages directly to his mother because on two occasions he cashed his own pay checks. It had been the habit of the mother to receive his pay check and then give him such money as he needed. On the two occasions in question he needed money to pay bills before going home and obtained his mother's consent to cash the checks and use the amounts needed to pay the bills. We are unable to see where these isolated incidents change the fact that he gave his money to his mother. The very fact that he first obtained her consent to cash the checks discloses his purpose that she should have control of his earnings.

Appellant says that the evidence does not show that decedent's wages were used in taking care of the family and particularly the two minor appellees because the mother gave him back regularly $25 or more and gave him $27 per month to pay on his automobile.

We cannot agree with appellant's interpretation of the evidence. The mother did testify that sometimes she gave decedent back $25 or even more from his pay check, but her testimony was that usually it was $5 per week and sometimes even less

when he did not need that much. The evidence is clear that she exercised control over all his earnings and gave him as a member of the family such money as he needed or wanted. It is true that she gave him whatever he asked for but her indulgence did not change the basic fact that the control always remained with her, or the fact that his earnings went to her for the support of the family, including herself and the two minor appellees. Even when she gave decedent back as much as $25 out of his pay check she retained $55 or more.

Appellant says that the evidence does not show that any specific portion of decedent's contributions was appropriated for the exclusive use and benefit of appellees and that such a showing is necessary where only a portion of decedent's income is put into a common fund to defray the general expenses of the household.

Assuming, without deciding, that where all of a decedent's income does not go into the common family fund, it is necessary that claimants show the specific portion of the contributions appropriated for their exclusive use and benefit, we cannot agree with appellant's statement that the evidence shows that only a portion of decedent's income was put into the common fund to defray the general household expenses. The evidence shows that all of decedent's income was given to his mother to go into the common fund. The fact that he as well as other members of the family was supported out of the general fund does not change the fact that all of his income became a part of it when he turned all of that income over to his mother. *People's Hardware Co.* v. *Croke* (1918), 66 Ind. App. 340, 118 N. E. 314.

Appellant calls our attention to the case of *Guarantee*

*Tire & Rubber Co.* v. *Cox* (1933), 96 Ind. App. 363, 183 N. E. 679. The conclusion reached in that case is not based upon the fact that all of the decedent's income did not go into the common fund. However, that opinion does hold that where the decedent contributed $9 per week to a common fund, which was used to support a family consisting of his father and mother and four other persons over the age of 21, three members of which family also made contributions and three of whom contributed nothing, it was incumbent upon the father and mother as claimants to show what specific portion of their deceased son's wages was appropriated for their exclusive use and benefit.

The facts in that case are clearly distinguishable from the facts here. In the case at hand the evidence discloses that all the members of the household, except appellees, were earning such amounts as would justify the Industrial Board in finding that they were self-supporting and that decedent's contributions were appropriated to the exclusive use and benefit of appellees who were not self-supporting.

Appellant contends that the finding of the Industrial Board that appellants were partially dependent, and its failure to fix the degree or extent of such dependency, coupled with its award for compensation equal to that to which persons are entitled who are wholly dependent, is contrary to law.

The Industrial Board does, however, find that appellees were partially dependent upon decedent and that he contributed his entire average weekly wages of $42.42 to the common family fund. This finding is amply supported by the evidence and is sufficient to support the award of $16.50.

Award affirmed with statutory 5% increase.

NOTE.—Reported in 49 N. E. (2d) 395.